**Morris E. WHITESIDE, Petitioner,**

v.

**Donald E. BORDENKIRCHER, Respondent.**

**Civ. A. No. C 76–0374 L(4).**

United States District Court, W. D. Kentucky, Louisville Division.

May 20, 1977.

Terrence R. Fitzgerald, Louisville, Ky., for petitioner.

Robert F. Stephens, Atty. Gen., Commonwealth of Kentucky, Frankfort, Ky., for respondent.

## MEMORANDUM OPINION

ALLEN, District Judge.

This cause was brought pursuant to 28 U.S.C. Secs. 2242 and 2254 for a writ of habeas corpus. The petitioner was convicted of one count of armed robbery, Indictment No. 152797, on February 20, 1975, following a two-day jury trial in Jefferson Circuit Court, and was sentenced, upon the jury's recommendation, to life imprisonment. An appeal to the Kentucky Supreme Court resulted in a judgment affirming that conviction on January 13, 1976; and on June 1, 1976, the United States Supreme Court denied a petition for writ of certiorari, seeking review of the conviction.

■ The only issue presented by this action is whether the prosecutor's closing argument denied petitioner his Fourteenth Amendment right to a fair trial or his Sixth Amendment right of confrontation. Inasmuch as petitioner has exhausted his available state remedies, and there are no issues of fact, this matter is ripe for decision upon the petition and respondent's motion for summary judgment.

After having reviewed the transcript of record and the pleadings, we are of the opinion that the prosecutor's closing argument, taken as a whole, was so inflammatory, improper, and prejudicial as to deny petitioner his Fourteenth Amendment right to a fair trial. Therefore, the Court shall not consider the merits of petitioner's argument that the summation also was violative of the Sixth Amendment's Confrontation Clause.

■ In making our determination, the Court is guided by the standard for review enunciated by the Supreme Court in *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974), with regard to allegations of Due Process violations in habeas corpus petitions:

"The Court of Appeals in this case noted, as petitioner urged, that its review was 'the narrow one of due process, and not the broad exercise of supervisory power that (it) would possess in regard to (its) own trial court.' (473 F.2d, at 1240.) We regard this observation as important for not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.' *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941)."

See, also, *United States v. Mulligan*, 544 F.2d 674, 678 (3rd Cir. 1976); *Malley v. Connecticut*, 414 F.Supp. 1115, 1119 (D.Conn.1976).

■ In addition, the Court has taken into consideration the factors listed by the Sixth Circuit for determining when prosecutorial misconduct amounts to reversible error, to wit: "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of competent proofs introduced to establish the guilt of the accused." See, *United States v. Leon*, 534 F.2d 667, 679 (6th Cir. 1976); *United States v. Cheaves*, No. 76–1106, p. 7 (nonpublished opinion, filed September 29, 1976).

In the instant case, the following improper arguments and comments were made to the jury by the prosecutor in his closing statement. In an attempt to bolster the testimony of the only eyewitness of the crime to testify, Mrs. Walburga Johnson, the prosecutor intimated that her life may have been or might be threatened because of her testifying by stating that she was a "good, hardworking, respectable woman that took, you might say her life in her hands, and came in here today and gave you the facts of what happened," that her testimony "took courage," and that it was a problem getting victims of armed robberies to come into court because they were "ter-

rorized." There was nothing in the record to substantiate these innuendoes, and language similar to the above in closing statements by United States Attorneys has been held to constitute reversible error. See, *United States v. Serrano*, 496 F.2d 81 (5th Cir. 1974); *United States v. Brown*, 451 F.2d 1231, 1236 (5th Cir. 1971).

The prosecutor repeatedly referred, in highly inflammatory language, to rising crime in the community and the inability of the courts to cope with it, in making such statements as the robbery in question was not even reported in the newspaper "because that kind of thing is no longer news," that "(w)e can't actually handle all of these cases that are coming into court," that "(y)ou see an awful lot of people being turned loose, often out of this courtroom . . . because we just can't handle the volume of work that is coming in here," that "(w)e are being overpowered by crime," and pleading with the jury as follows:

> "Pretty soon we are going to have bands like that walking the streets of all hours of the day and night. Walking into—today it was a little Convenient store. Tomorrow it's going to be manufacturing institutions. The day after that all the traffic coming down a super-highway stopped by a band of bandits."

Petitioner's counsel consistently objected to the above type of remarks, but was overruled every time. In fact, the trial court invited the jury to take into account the overcrowding of the court's dockets and the fact that "people (were) being turned loose," by commenting that the jury, by being in the courtroom all week, had observed these things.

■ It is, of course, well established that the defendant in a criminal trial has the right to be tried only on those matters coming within the four corners of the indictment, and that it is improper for a prosecutor to arouse the passions and prejudices of the jurors by referring to facts not in evidence and wholly irrelevant to the issues involved. See, e. g., *Viereck v. United States*, 318 U.S. 236, 247, 63 S.Ct. 561, 87 L.Ed. 734 (1943); *United States v. Fullmer*,

457 F.2d 447, 449 (7th Cir. 1972); *Bailey v. United States*, 410 F.2d 1209, 1214–1215 (10th Cir.), cert. den. *sub nom, Freeman v. United States*, 396 U.S. 933, 90 S.Ct. 276, 24 L.Ed.2d 232 (1969).

The Supreme Court in *Viereck, supra*, at pp. 247–248, 63 S.Ct. 561, held that a United States Attorney's remarks in closing, inciting the fears and patriotism of the jurors in order to gain the conviction of the defendant, a foreign agent charged with inadequately registering his activities with the United States Government, constituted reversible error.

Further, the prosecutor repeatedly insinuated that the defendant was a member of some sort of criminal "organization" or "association," which "roves around invading places of business, putting people in danger of their lives."

Although the trial court overruled all objections by petitioner's counsel to such references, this invocation of a criminal association to which the petitioner belonged and of other crimes committed by that association was extremely improper and is analogous to language condemned by the Sixth Circuit in *United States v. Love*, 534 F.2d 87, 89 (6th Cir. 1976). In that case, the Sixth Circuit reversed a conviction, holding that the prosecutor committed prejudicial error when he asked the appellant whether his employer organization was a member of another organization "of ill character like (the) Mafia or anything like that," even though the trial court sustained an objection to the question, reprimanded the government attorney in open court for asking the question, and suggested that the jury would totally disregard it.

If all of the above were not enough, the prosecutor also appealed to the jury's prejudice against welfare recipients, in an effort to discredit petitioner's alibi witnesses, some of whom had testified that they received checks, by alluding to them as "these type of people that are involved in that, where ADC checks were coming in—no other—no other money coming in." In a somewhat equivocal harangue, it not being clear whether the prosecutor was referring to petitioner's alleged criminal "associates" or

to his alibi witnesses, or to both, the prosecutor again sought to appeal to the jurors' prejudice against those who do not work:

"But all of you people, I'm sure, work for a living, of (sic), if you're not working for a living, you are living off of what you earned when you were working for a living, if you are retired. You all are working for a living. Mrs. Johnson is working for a living. Mr. Wheeler (another witness for the Commonwealth), although he is in an ownership capacity, is working for a living. They are all producing . . .. The people that are working for a living have to do that, not only for themselves anymore, but for a whole class of people that have set themselves on a path of preying on those people that are working for a living. And to that group belongs the defendant and his associates."

An objection at the beginning of this argument was overruled by the court. An appeal by the prosecutor to the jury's class prejudice was condemned by the Supreme Court in *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 237, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); and racially prejudicial remarks in closing caused the Second Circuit in *United States v. McKendrick*, 481 F.2d 152 (2nd Cir. 1973), to grant a petition for a writ of habeas corpus. See, also, *Malley v. Connecticut, supra*, at 1120 (closing remarks associating the defendant with the "drug scene.")

Finally, there were several more minor improprieties committed by the prosecutor in his summation, as well as misstatements of law. The misstatements of law, both of which were condoned by the trial court, by overruling defense counsel's objections thereto, were the prosecutor's assertions that while the government had no right to discover evidence from the defendant, it had to produce its evidence for the defendant, but see Kentucky Rules of Criminal Procedure 7.24, and that the purpose of defense counsel's objecting was "to keep me from talking coherently and possibly cause me to lose my trend."

The other improper comments were the prosecutor's allegation that petitioner's alibi was "concocted," see, *United States v. Gon-*

*zalez*, 488 F.2d 833, 836 (2nd Cir. 1973) ("concocted defense" statement held error); his argument that if petitioner's alibi witnesses were telling the truth, they would have contacted the police, see, *United States v. Young*, 150 U.S.App.D.C. 98, 463 F.2d 934, 938 (1972) (error to point out in closing that alibi witness failed to contact police); and his reference to petitioner's prior conviction for the purpose of showing that he was a dangerous individual, where the conviction was admissible only for impeachment purposes, see *United States v. Bell*, 535 F.2d 886, 887–888 (5th Cir. 1976) (improper for prosecutor to mention defendant's prior conviction, which was unrelated to charged offense, in closing).

■ While none of the above comments, arguments, and misstatements, individually, would probably have risen to constitutional proportions, the total effect of all of them was to deny the petitioner his Fourteenth Amendment right to a fair trial before an impartial jury.

The prosecutor's closing remarks in the case at bar were deliberate, extensive, and highly prejudicial to the petitioner, distinguishing them from the "fleeting passages . . . not intended, or effective, as appeals to passion or prejudice," in *United States v. Ramos*, 268 F.2d 878, 880 (2nd Cir. 1959), and from the "ambiguous" and "isolated" statement in *Donnelly v. DeChristoforo, supra*, at 644–645. Furthermore, they went unchecked by the trial court, who overruled every objection made by petitioner's counsel during the Commonwealth's summation.

■ Respondent has maintained that even if constitutional error were present, it was harmless. Under *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), before a federal constitutional error can be held harmless, it must be deemed "harmless beyond a reasonable doubt." The Sixth Circuit has stated, specifically with regard to prosecutorial misconduct in closing argument, that error may be harmless only if the proof against the defendant is "overwhelming." See, *United States v. Bowen*, 500 F.2d 41, 42 (6th Cir.), cert. denied, 419 U.S. 1003 (1974);

*Berryman v. Colbert*, 538 F.2d 1247 (6th Cir. 1976), U.S. appeal pending.

We do not find that the evidence adduced against this petitioner was "overwhelming." There was no physical evidence linking the petitioner to the crime with which he was charged, and the question for the jury was basically one of credibility between the eyewitness to the robbery and the petitioner and his alibi witnesses. Moreover, the fact that the maximum penalty was recommended by the jury, which had a choice of from 10 years to life, indicates that the prosecutor's closing argument may have affected their sentencing decision.

It is unfortunate that the Commonwealth Attorney could not have confined his oratorial eloquence to the facts in issue, and that he felt it necessary to rely on irrelevant and prejudicial, as well as unethical, see ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecutorial Function and the Defense Function, Approved Draft, Paragraph 5.8 (1971), arguments to obtain a conviction.

An order granting petitioner's motion for a writ of habeas corpus has this day been entered.