PEOPLE v LAFAYETTE

Docket No. 67774. Submitted April 11, 1984, at Grand Rapids.—
Decided October 16, 1984.

Johnnie L. Lafayette was convicted of armed robbery, Calhoun
Circuit Court, James C. Kingsley, J. The only evidence against
defendant was the in-court identification of the robbery victim,
who had twice been exposed to identification procedures which
the court had found to be improperly suggestive. The court
ruled that testimony regarding the prior identification proce-
dures was inadmissible, but that an independent basis was
shown for the in-court identification. Defendant appealed, alleg-
ing that the trial court erred in finding an independent basis
for the in-court identification and in allowing the prosecutor to
question defendant's alibi witnesses regarding their failure to
inform the police of defendant's alibi upon learning of his
arrest. *Held:*

1. The prosecution failed to show by clear and convincing
evidence that the in-court identification had a sufficient inde-
pendent basis to purge the taint of the prior improper identifi-
cation procedures. Admission of the in-court identification testi-
mony was an abuse of discretion.

2. The prosecutor's cross-examination of the alibi witnesses
regarding their failure to speak or act was not improper.

Reversed and remanded.

1. CRIMINAL LAW — IDENTIFICATION OF DEFENDANT — IN-COURT
IDENTIFICATION.

Factors to be considered in determining whether an independent
basis exists for an in-court identification of a defendant where

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence §§ 371, 372.

Admissibility and weight of extrajudicial or pretrial identification
where witness was unable or failed to make in-court identifica-
tion. 29 ALR4th 104.

Admissibility of evidence as to extrajudicial or pretrial identifica-
tion. 71 ALR2d 449.

[3] 81 Am Jur 2d, Witnesses § 539.5.

Impeachment of defense witness in criminal case by showing wit-
ness' prior silence or failure or refusal to testify. 20 ALR4th 245.

the witness's pretrial identification has been found to be improper include any prior relationship with the defendant, the opportunity to observe the offense, the length of time between the offense and the identification, any discrepancies between the pretrial identification and defendant's actual description, any previous proper identification or failure to identify the defendant, any prior identification of another person as the perpetrator, the nature of the offense, and any idiosyncratic or special features of the defendant.

2. CRIMINAL LAW — IDENTIFICATION OF DEFENDANT — BURDEN OF PROOF.

The burden is on the prosecutor to prove by clear and convincing evidence that an in-court identification of a defendant by a witness has a sufficient independent basis to purge the taint caused by a prior improper identification procedure.

3. CRIMINAL LAW — WITNESSES — FAILURE TO ACT.

The credibility of a witness may be attacked by showing that he failed to speak or act when it would have been natural to do so if the facts were in accordance with his testimony.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Conrad J. Sindt,* Prosecuting Attorney, and *Richard M. C. Adams,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Ronald J. Bretz),* for defendant on appeal.

Before: R. M. MAHER, P.J., and WAHLS and J. A. HATHAWAY,* JJ.

PER CURIAM. Defendant appeals as of right from a jury conviction for the armed robbery of a Folk Oil gas station in Albion, Michigan. MCL 750.529; MSA 28.797. He was sentenced to serve 15 to 40 years imprisonment.

The only evidence linking defendant to the robbery was the in-court eyewitness identification of defendant by the 16-year-old Folk Oil employee

---

* Circuit judge, sitting on the Court of Appeals by assignment.

who was robbed, Thomas Duborg. Before identifying defendant in court, Duborg was exposed to two identification procedures which the trial court found to have been improperly suggestive.[1] The trial court ruled that testimony regarding these identification procedures was inadmissible during trial,[2] but held that the prosecution had shown an independent basis for Duborg's in-court identification. Duborg was therefore permitted to identify defendant during the trial.

Defendant presented an alibi defense through three friends who testified that defendant had been with them the night of the robbery, playing cards. The prosecutor impeached all three witnesses by questioning them about their failure to inform the police of defendant's alibi after defendant was arrested. This line of analysis was reiterated by the prosecutor in his closing and rebuttal arguments.

On appeal, defendant argues that the trial court abused its discretion by ruling that an independent basis existed for Duborg's in-court identification. The factors to be considered by a trial court in determining whether or not an independent basis exists for an in-court identification are found in *People v Kachar,* 400 Mich 78, 95-97; 252 NW2d 807 (1977):

"1. Prior relationship with or knowledge of the defendant.

"2. The opportunity to observe the offense. This includes such factors as length of time of the observation, lighting, noise or other factor affecting sensory perception and proximity to the alleged criminal act.

"3. Length of time between the offense and the dis-

---

[1] These identifications were a photographic identification using a single photograph and a one-on-one confrontation at the scene of the crime.

[2] The prosecution did not appeal from this ruling.

puted identification. See *People v Anderson,* 389 Mich 155, 214; 205 NW2d 461 (1973), for analysis of the curve of forgetting.

"4. Accuracy or discrepancies in the pre-lineup or showup description and defendant's actual description.

"5. Any previous proper identification or failure to identify the defendant.

"6. Any identification prior to lineup or showup of another person as defendant.

"7. Still another consideration, not mentioned in *Wade [United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967)], but essential to a determination of judging the reliability of the witness's perceptions is the nature of the alleged offense and the physical and psychological state of the victim. 'In *critical situations* perception will become distorted and any *strong* emotion (as opposed to mildly emotional experiences) will affect not only what and how much we *perceive,* but also will affect our *memory* of what occurred.' 389 Mich 211. (Emphasis in original.)

"Factors such as *'fatigue, nervous exhaustion, alcohol and drugs',* 389 Mich 213 (emphasis in original), and age and intelligence of the witness are obviously relevant. Levine and Tapp, *The Psychology of Criminal Identification: The Gap from Wade to Kirby,* 121 U Pa L Rev 1079, 1102-1103 (1973).

"8. Any idiosyncratic or special features of defendant.

"Further, the court should refer to the actual lineup or showup to determine whether the witness's testimony that the identification was due to perceptions received at the time of the alleged offenses is credible in view of the witness's performance at, and the conduct of, the disputed lineup or showup."

These factors are to be considered in light of the degree of suggestiveness found in the improper identification procedures:

" 'In cases where the identification procedures employed are suggestive and conducive to irreparable misidentification then, by definition, these procedures operate upon the unconscious recognition process of the

witness and create a likelihood that there will be a misidentification irrespective of the degree of previous acquaintanceship between the witness and the culprit and irrespective of the opportunity to observe during the commission of the crime.

" 'Where the procedures used are, as in this case, grossly beyond the bounds of propriety it becomes even more important to examine the evidence of what "independent" knowledge the victim or witness had of the identity of the culprit *before* suggestive influences were brought to bear.' " 400 Mich 91-92, quoting *People v Anderson,* 389 Mich 155, 189; 205 NW2d 461 (1973).

In this case, the trial court was presented with the following evidence. Duborg was working alone in the gas station on January 7, 1982, when a man came out of the station restroom. He asked Duborg the price of cigarettes and then demanded money. Duborg thought he was joking, but became frightened and nervous when the man produced a knife. Duborg handed over more than $400 in cash and the man fled. The incident from start to finish had taken less than a minute.

Duborg called the police. He gave a description of the robber as approximately 6'3" to 6'4" tall, black, clad in a dark brown leather coat, maroon pants and black army boots. The man was not wearing a mask or hat and Duborg saw a "diamond" earring glittering in the right ear.[3] He thought the man might have had some facial hair as he vaguely recalled some hair on the man's chin. Duborg had been two to three feet from the man and the lighting was good.

Within a few hours of the crime, a police officer showed Duborg five or six photographs. Duborg picked one out as "similar to" or "greatly resembling" the robber, but he did not identify the man

[3] Duborg repeatedly insisted that the earring was in the robber's right ear.

as the robber. The photograph was not of defendant. Subsequently, the police, within a few hours, eliminated this suspect and focused on defendant. Defendant was suspected because a police officer had seen him three days before the robbery wearing an outfit like that worn by the robber.

Either that evening or the next morning, an officer was ordered by his superior to show Duborg a single photograph—that of defendant. Duborg stated that he looked at the photograph and asked the officer if it was the same man that he had selected the day before. Upon being told, "No", Duborg concluded he had previously picked the wrong man and believed that the police suspected the man in the single photograph. Duborg said he thought the man in the photograph might be the robber, but he had some doubts; he could not be sure because the subject's head was down.[4]

Approximately 30 minutes later, two officers drove into Duborg's station in a squad car. Duborg saw defendant inside the car. Duborg stated that defendant was brought from the squad car to stand in front of his window; he thought defendant was handcuffed and believed the police held defendant in custody. This reasssured Duborg that by identifying defendant as the robber, he would be identifying the right person. He knew this person was the same person as the one from the single photograph identification. Duborg identified defendant as the robber, but stated at the hearing that he still had doubts in his mind at that point. He therefore went over to the squad car and peered inside for a second look. He did not state whether or not this convinced him, but he testified that the

---

[4] Both this photograph and the one selected earlier by Duborg were not produced at the hearing or at trial because the "single" photograph was destroyed by the police and the other photograph had been lost.

single photograph identification and one-on-one confrontation "reinforced and reassured" him that he was identifying the right person.

At the hearing, Duborg stated that he had never seen defendant before the robbery, had not noticed any scars on the robber's face at a distance of two to three feet in good light although he could see two scars on defendant's face from a distance of 19 to 20 feet in court, and did not have any regular contact with blacks. The evidence also established that defendant's right ear was not pierced, although his left ear was, and that he had sported a sizeable mustache on the day after the robbery when he was arrested. Defendant is over six feet tall and of a slender build, which did fit the description. Finally, Duborg stated that he thought he could have identified defendant as the robber in court even without the earlier identifications.

On the basis of this testimony, the trial court found an independent basis for an in-court identification. Duborg promptly and without hesitation identified defendant as the robber.

We cannot agree with the trial court that application of the *Kachar* factors to this evidence results in a finding of an independent basis for Duborg's in-court identification of defendant. The burden is on the prosecution to prove by "clear and convincing evidence that the in-court identification has a sufficient independent basis to *purge the taint* caused by the illegal confrontation". *Kachar,* 400 Mich 97 (emphasis added). In this case, there were several factors which weighed in favor of admitting the in-court identification. Among these were the well-lit circumstances under which Duborg viewed the robber, the fact that Duborg was not particularly frightened for part of the "minute" he viewed the robber, the fact that Duborg's general description of the robber

matched defendant's general description, and the inclusion of an earring in the description. In addition, although Duborg selected another man's photograph from the original photographic array, Duborg did so only because the man resembled the robber and not because he thought the man actually was the robber.

However, in contrast to these factors, we must consider that Duborg had never seen the robber before the robbery, had had very little previous contact with blacks, had repeatedly stressed in his description of the robber that the robber had an earring in his right ear when defendant had only a pierced left ear, and that Duborg had not noticed either a mustache or facial scarring on the robber when these features were readily identifiable on defendant. Finally, and most importantly, we note that Duborg testified that even after he had viewed defendant face-to-face in a highly suggestive one-on-one confrontation at the scene of the robbery only a day after the robbery, he still had doubts about defendant being the robber. However, when asked to identify the robber in the courtroom, Duborg was able to unhesitatingly identify defendant as the robber. As the Supreme Court stated in *Kachar,* "the court should refer to the actual lineup or showup to determine whether the witness's testimony that the identification was due to perceptions received at the time of the alleged offenses is credible in view of the witness's performance at, and the conduct of, the disputed lineup or showup". 400 Mich 96-97. Despite Duborg's belief that he would have been able to identify defendant at trial even had he not been exposed to the single photograph lineup and the one-on-one confrontation, we are unable to find that the taint of these highly improper identification procedures was adequately purged by either the passage of

time or the evidence of Duborg's ability to observe the robber at the time of the robbery. We therefore conclude that the trial court abused its discretion by permitting the in-court identification.

We further find that the admission of this evidence constituted reversible error. The prosecution introduced no evidence linking defendant to the robbery other than Duborg's in-court identification. Although the police dusted for fingerprints at the gas station, the results of this search were not given at the trial. In addition, the prosecution did not present any evidence that defendant possessed clothes similar to those worn by the robber or that he possessed either a diamond earring or a knife similar to the one used by the robber. Under these circumstances, the admission of the identification testimony cannot be considered harmless.

We will address defendant's remaining issue because it may arise again on retrial. Defendant argues that the prosecutor improperly questioned defendant's alibi witnesses about their "failure" to inform the police that defendant had an alibi even after defendant had been arrested. Under two federal court cases relied upon by defendant,[5] such questioning is improper because "no inference can be drawn from the fact that a witness did not go to the police when he learns they have made an arrest of a defendant for a crime committed at a time for which he can provide alibi testimony. He might reasonably presume that it was sufficient for him to relate his knowledge to the attorney retained or appointed to represent defendant." *United States v Young,* 150 US App DC 102; 463 F2d 938. However, Michigan has never adopted this reasoning. Instead, in *People v McClow,* 40 Mich App 185, 193; 198 NW2d 707 (1972), this

---

[5] *United States v Young,* 150 US App DC 98; 463 F2d 934 (1972); *Whiteside v Bordenkircher,* 435 F Supp 68 (WD Ky, 1977).

Court held that this type of cross-examination was proper where it constituted interrogation "as to the conduct on [the witness's] part at variance and inconsistent with what would be natural or probable if his statements on his direct examination were true. The credibility of a witness may be attacked by showing that he failed to speak or act when it would have been natural to do so if the facts were in accordance with his testimony." This view has since been adopted by other panels of this Court in *People v Histed*, 56 Mich App 630; 224 NW2d 721 (1974), and *People v Diaz*, 98 Mich App 675; 296 NW2d 337 (1980).

We agree with the reasoning adopted by the *McClow* Court. Rather than deciding as a matter of law that "no inference" may even be drawn from a witness's decision not to notify the police of a defendant's alibi defense, this reasoning permits a trial court to exercise its discretion under the particular facts of a case. We note that, in this case, defendant did not object to the prosecutor's questions and so failed to invoke the trial court's discretion.

Reversed and remanded for a new trial.