PEOPLE v GENDRON

Docket No. 66908. Submitted May 8, 1985, at Detroit.—Decided June 24, 1985. Leave to appeal applied for.

Defendant, Joseph Gendron, was convicted of armed robbery following a jury trial in the Recorder's Court of Detroit. The trial court, William C. Hague, J., sentenced defendant to from 40 to 60 years imprisonment. Defendant appeals. *Held:*

1. The trial court did not err in denying defendant's motion to suppress evidence of an incident which occurred two weeks after the armed robbery which incident resulted in defendant's conviction for the unarmed robbery of the same complainant. Such evidence was extremely probative since the main issue in the case was that of identification.

2. The trial court violated MRE 609(a)(2) by failing to articu-

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Evidence §§ 320, 321, 333.
Admissibility, under Rule 404(b) of Federal Rules of Evidence, of evidence of other crimes, wrongs, or acts not similar to offense charged. 41 ALR Fed 497.

[2] Am Jur 2d, Evidence § 333.
Admissibility of evidence of other crimes, wrongs, or acts under Rule 404(b) of Federal Rules of Evidence, in civil cases. 64 ALR Fed 648.

[3, 4] Am Jur 2d, Trial § 88.
Manner or extent of trial judge's examination of witnesses in civil cases. 6 ALR4th 951.
See the annotations in the ALR3d/4th Quick Index under the topic Appeal and Error.

[5] Am Jur 2d, Appeal and Error § 545 *et seq.*

[6] Am Jur 2d, Trial §§ 644, 860-863.
Propriety of jury instruction regarding credibility of witness who has been convicted of a crime. 9 ALR4th 897.

[7] Am Jur 2d, Trial §§ 588, 589, 727, 728.

[8] Am Jur 2d, Appeal and Error § 533 *et seq.*

[9] Am Jur 2d, Criminal Law §§ 408, 976-983.
Accused's right to choose particular counsel appointed to assist him. 66 ALR 3d 996.

[10] Am Jur 2d, Criminal Law § 525 *et seq.*
See the annotations in the ALR3d/4th Quick Index under the topic Sentence and Punishment.

late on the record the factors considered in making the determination to permit the use of evidence of defendant's prior conviction for larceny under $100 for impeachment. However, such failure does not result in reversible error since the record reveals that the court was aware of its discretionary power.

3. There was no abuse of discretion in regard to the trial court's questioning of two alibi witnesses.

4. The veil of judicial impartiality was left intact despite a comment by the trial court which implied the prediction of an early verdict. Such comment could not have unduly influenced the jury to return a hasty verdict before proper consideration of the evidence presented at trial.

5. Defendant's failure to object to a certain jury instruction precludes appellate review of that issue since a simple corrective instruction could easily have cured any potential prejudice.

6. The trial court did not err in refusing to instruct the jury with a Criminal Jury Instruction relating to the impeachment of a witness with prior inconsistent statements or in refusing to instruct the jury pursuant to a certain instruction submitted by the defendant.

7. The jury instructions, as a whole, properly instructed the jury regarding the second element of the crime of armed robbery.

8. While the Court of Appeals was not without objection as to the procedure utilized to remove defendant's original court-appointed attorney in favor of a more experienced court-appointed attorney, the Court found no grounds for a new trial.

9. The trial court, as a consideration in sentencing the defendant, improperly relied upon armed robbery and kidnapping charges for which the defendant had been acquitted. The sentence is set aside and the case remanded to the trial court for resentencing.

Remanded for resentencing only, and affirmed in all other respects.

1. CRIMINAL LAW — EVIDENCE — OTHER CRIMES.

An exception to the general rule of inadmissibility regarding evidence of distinct, unrelated crimes provides that when the evidence offered tends to prove the identity of the person who committed the crime for which he is on trial, such evidence is competent; where a witness's confrontation with a defendant occurs under circumstances similar to those in a former confrontation, an even stronger basis exists for admitting the evidence since it establishes that the witness had a substantial basis for correctly identifying the accused.

2. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS — APPEAL —
   HARMLESS ERROR — RULES OF EVIDENCE.

   A trial court's failure to comply with the Michigan Rule of
   Evidence requiring it to articulate on the record the factors
   considered in making the determination to permit the use of
   evidence of a prior conviction for impeachment is harmless
   error where the record reveals that the trial court was aware of
   its discretionary power to exclude the use of such evidence
   (MRE 609[a][2]).

3. TRIAL — JUDGES — EXAMINATION OF WITNESSES.

   Trial judges are granted broad discretion regarding the examina-
   tion of witnesses; however, the examination should not be
   hostile and the judge should avoid invading the role of the
   prosecutor.

4. EVIDENCE — WITNESSES — EXAMINATION BY TRIAL COURT — NEW
   TRIALS.

   The test to determine whether a new trial is in order as a result
   of the trial court's examination of a witness is whether the
   judge's questions may well have unjustifiably aroused suspicion
   in the mind of the jury as to the witness's credibility and
   whether partiality quite possibly could have influenced the jury
   to the detriment of defendant's case.

5. CRIMINAL LAW — JURY INSTRUCTIONS — PRESERVING QUESTION.

   Appellate review of an alleged error in the jury instructions is
   precluded by the defendant's failure to object at trial where,
   had such an objection been raised, a simple corrective instruc-
   tion could easily have cured any potential prejudice.

6. CRIMINAL LAW — EVIDENCE — WITNESSES — INCONSISTENT STATE-
   MENTS — IMPEACHMENT — RULES OF EVIDENCE.

   A trial court's refusal to instruct the jury relating to the im-
   peachment of a witness by prior inconsistent statements is not
   error where no impeachment occurred or where the defendant
   failed to lay a proper foundation for impeachment by affording
   the witness an opportunity to explain or deny the alleged
   inconsistent statement (MRE 613[b]).

7. CRIMINAL LAW — JURY INSTRUCTIONS — APPEAL.

   A trial court's refusal to instruct the jury as to a theory of
   defense submitted by the defendant is not error where the
   instruction submitted went beyond theory and constituted an
   argumentative restatement of the facts slanted to favor the
   defendant.

8. JURY — JURY INSTRUCTIONS — APPEAL.

Jury instructions must be read as a whole on appeal and not extracted piecemeal in an effort to establish error requiring reversal.

9. CRIMINAL LAW — INDIGENT DEFENDENTS — RIGHT TO COUNSEL.

An indigent defendant is not entitled to the counsel of his choice, rather, he is entitled only to representation by counsel who performs at least as well as a lawyer with ordinary training and skill in the criminal law.

10. CRIMINAL LAW — SENTENCING.

A trial judge, in imposing a sentence, may not make an independent finding of a defendant's guilt on another charge, especially where the defendant has been found not guilty on the other charge.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Kim Robert Fawcett),* for defendant on appeal.

Before: WAHLS, P.J., and J. H. GILLIS and S. EVERETT,* JJ.

PER CURIAM. Defendant appeals from his conviction of armed robbery, MCL 750.529; MSA 28.797. He was sentenced to serve a prison term of from 40 to 60 years and appeals as of right.

Defendant's conviction stems from the armed robbery of a bar which occurred March 6, 1981. The complainant testified, that just as she was ready to open the bar for business at 10 a.m. the defendant entered. The complainant was frightened by the look on his face, so she turned and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

walked rapidly away. The defendant came up behind her and placed what felt like a gun in her back and forced her to lie down at the end of the bar. The defendant then dared the complainant to move and indicated that if she did "he'd blow my brains out". As she lay on the floor, the complainant heard money being removed from the cash register. The complainant was also warned against attempting to take down the license plate number because she would be killed if she did so. Defendant then successfully escaped.

The complainant was certain of her identification of the defendant as the perpetrator of this crime because she had seen him on four other occasions. The day before the robbery, defendant entered the bar with another man at approximately the same time as the robbery, had drinks and "eyed" the cash register. On the day following the robbery, the complainant reported to the police that she saw defendant sitting in a car in the parking lot of her bank. Two weeks after the robbery, on March 21, 1981, as she entered her van in a shopping center parking lot, defendant and the same man who was with him in the bar on March 5th approached her van and forced her at gunpoint to get into the back and lie down. Defendant reportedly warned her, "it won't be like it was in the bar. If you get up this time, I'll kill you." Defendant took the complainant's purse, then forced her to drive the van. Since the complainant's purse contained only $20, defendant demanded that she drive to her relatives' homes and obtain more money. Eventually, the complainant was forced to drive to an empty parking lot in Lincoln Park. She was then told to lie down in the back seat and was warned not to get up while the two men made their escape. Defendant was convicted of unarmed robbery in connection with this

incident at a trial which preceded the trial in the instant case.

Complainant next saw defendant on March 27, 1981, when he came into her bar and ordered two beers. After assuring herself that the man sitting at the bar was indeed the same man who robbed her on two occasions, the complainant asked another customer to call the police. Although defendant left before they arrived, his fingerprints were found on the beer bottles and glasses which he had used. Finally, on April 11, 1981, complainant, her son and a third person who had been in the bar on the 27th drove around the area of town where the patron thought he had seen defendant. They were fortunate enough to cross paths with defendant and detained him until the police arrived. The complainant testified that she had no doubt defendant was the man who robbed her.

Defendant's first claim on appeal is that the trial court erred in denying his motion to suppress evidence of the March 21, 1981, incident which resulted in defendant's conviction for unarmed robbery. Central to the defendant's argument is his insistence that the trial court misapplied the Michigan Supreme Court's decison in *People v Spillman,* 399 Mich 313; 249 NW2d 73 (1976). In *Spillman,* the defendant and an accomplice attacked and beat the victim just as he was closing his bar and then stole the victim's car. Defendant was convicted of assault with intent to rob while armed and unlawfully driving away a motor vehicle. The issue on appeal was whether the trial court erred in admitting testimony by the victim that he had been confronted by the defendant several weeks prior to the offense in question when defendant committed an armed robbery in the victim's bar. The victim also testified that

defendant wore the same coat and carried the same gun on both occasions.

In affirming the trial court's decision to admit the testimony, the Supreme Court noted the general rule of inadmissibility regarding evidence of distinct, unrelated crimes, but relied upon the exception to the general rule that "when the evidence offered tends to prove the identity of the person who committed the crime for which he is on trial, such evidence is competent". 399 Mich 320. Further, the Court noted that where a witness's confrontation with a defendant occurs under circumstances similar to those in a former confrontation, an even stronger basis exists for admitting the evidence since it establishes that "the witness had a substantial basis for correctly identifying the accused". 399 Mich 320.

Here, defendant relies upon the Supreme Court's recognition that a trial judge may, in some cases, be justified in refusing to admit some evidence because its probative value may be outweighed by its prejudicial effect. 399 Mich 321. However, contrary to defendant's representations on appeal, the trial court properly considered this factor and concluded that the evidence was "extremely probative" since the main issue in the case was that of identification. Since we can find no legitimate nor compelling basis for distinguishing the issue before us from that presented in *Spillman,* we affirm the trial court's ruling.

Defendant next attacks the trial court's failure to articulate its reasons for permitting the use of evidence of a prior conviction of larceny under $100 for impeachment purposes. The trial court stated its ruling during the following discussion:

"*The Court:* Now, with reference to the motion to

suppress the prior conviction of this defendant. What is his criminal record; who has it?

"*Mr. Baker [Prosecuting Attorney]:* He has a larceny under $100.

"*The Court:* That will not be suppressed.

*Ms. Kromkowski [Defense Counsel]:* That'll not be?

"*The Court:* That'll not be suppressed. What else?

*Ms. Kromkowski:* The other conviction is the un-armed robbery.

"*The Court:* Well, that will be suppressed. I think that will be more prejudicial than probative to bring in the fact there was another armed robbery, okay."

It seems fairly clear that the trial court violated MRE 609(a)(2) by failing to articulate on the record the factors considered in making the determination to permit the use of the evidence of the prior conviction for impeachment. However, we do not agree that such failure amounts to reversible error. Despite the language of MRE 609(a)(2), this Court has held that the trial court must either exercise its discretion on the record or it must appear from the record that it was aware of its discretion and the factors relevant to the exercise of that discretion. *People v Cook,* 131 Mich App 796, 804; 347 NW2d 720 (1984); *People v Dyson,* 106 Mich App 90, 98-99; 307 NW2d 739 (1981); *People v Joyner,* 93 Mich App 554, 561; 287 NW2d 286 (1979). A recent order of the Michigan Supreme Court offers further support that a trial court's failure to articulate its exercise of discretion on the record does not rise to the level of reversible error. In *People v Handley (On Remand),* 135 Mich App 51, 56; 352 NW2d 343 (1984), this Court relied upon the Supreme Court's decisions in *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), and *People v West,* 408 Mich 332; 291 NW2d 48 (1980), to conclude that "the trial court's failure to 'positively indicate and identify its

exercise of discretion'" constituted reversible error. On appeal to the Supreme Court, this Court was reversed with instructions to reinstate defendant's convictions in an order dated April 5, 1985. *People v Handley,* 422 Mich 859; 365 NW2d 752 (1985). The order states, *inter alia,* that "[t]he record establishes that the trial court was actually aware of its discretionary power to exclude use of prior felony convictions to impeach at the defendant's 1978 trial". Although the *Handley* trial was held before the amended version of MRE 609(a)(2) took effect, we cannot believe that the Supreme Court intended through amendment to require reversal in every case where a trial court fails to articulate its reasons for permitting impeachment through evidence of prior convictions. Instead, we conclude that the failure to comply with MRE 609(a)(2) is harmless error if the record reveals that the trial court was aware of its discretionary power to exclude the use of the evidence of prior convictions. In the instant case, it cannot be disputed that the trial court was aware of its discretionary power since evidence of an unarmed robbery conviction was suppressed on the ground that its prejudicial effect outweighed any probative value. We therefore find no reversible error.

Defendant next complains of the trial court's questioning of two alibi witnesses. Trial judges are granted broad discretion regarding the examination of witnesses. *People v Cole,* 349 Mich 175; 84 NW2d 711 (1957). However, the examination should not be hostile and the judge should take care to avoid invading the role of the prosecutor. *Cole,* p 196. The test to determine whether a new trial is in order is whether the judge's question " 'may well have unjustifiably aroused suspicion in the mind of the jury' as to a witness' credibility, * * * *Simpson v Burton* [328 Mich 557, 563-564; 44

NW2d 178 (1950)], and whether partiality 'quite possibly could have influenced the jury to the detriment of defendant's case', * * * *People v Roby,* 38 Mich App 387, 392; 196 NW2d 346 (1972)". *People v Smith,* 64 Mich App 263, 267; 235 NW2d 754 (1975). See also *People v Redfern,* 71 Mich App 452, 457; 248 NW2d 582 (1976).

A review of the transcript reveals that, although extensive, the trial court's questioning of the witnesses was directed solely toward the clarification of relevant testimony since the alibi witnesses had much difficulty understanding the prosecutor's questions and communicating their answers. The questioning was by no means "intimidating, argumentative, prejudicial, unfair or partial". *Smith, supra,* p 267. We therefore find no abuse of discretion.

Defendant next characterizes the following colloquy as creating an atmosphere which required the return of a hasty verdict, thus denying defendant his right to a fair trial:

"*The Court:* All right ladies and gentlemen, before you go—there are fourteen of you now. After the—oh, we'll do that in the morning. I'm going to let you go home now.

"*Juror Number Eleven:* Tomorrow I have to take my husband to the doctor.

"*The Court:* When?

"*Juror Number Eleven:* Tomorrow.

"*The Court:* At what time?

"*Juror Number Eleven:* Oh, twelve o'clock.

"*The Court:* Twelve O'clock?

"*Juror Number Eleven:* Uh-huh.

"*The Court:* You'll probably be home at twelve o'clock. You can be with us tomorrow morning at nine-thirty; do you hear, can you make it then? Do you think you can get back at that time?

"*Juror Number Eleven:* Yes I do, but I—

"*The Court:* If there's an agreement between you, I'll excuse this lady if no objections, because I'm going to have to excuse her tomorrow.

"*Mr. Baker:* The People have no objection.

"*The Court:* And how about you?

"*Ms. Kromkowski:* I have no objections.

"*The Court:* We'll excuse you. We hope you've enjoyed it. All right, you won't have to be with us in the morning, Miss Shields. We thought we could get back without interruptions, but we didn't make it. Tomorrow morning at nine-thirty unless you want to stay here until six o'clock tonight.

"Don't talk about this case and come in tomorrow morning at nine-thirty."

While we agree that the trial court's comment that the juror would "probably be home by twelve o'clock" implied the prediction of an early verdict, we do not believe that such an off-hand comment could have unduly influenced the jury to return a hasty verdict before proper consideration of the evidence presented at trial. While the comment was better left unspoken, we find that the veil of judicial impartiality was left intact. *People v Rogers,* 60 Mich App 652, 657; 233 NW2d 8 (1975).

Defendant's final complaint with the performance of the trial judge concerns the following instruction, which defendant would argue persuaded the jury to find that defendant was armed:

"Now included in the offense of armed robbery is the offense of unarmed robbery. It is a lesser, included crime. The mere fact that I am reading you this lesser included crime should not diminish the probability of you finding that the defendant was armed. You must not do that. You are still to find the facts of this case and believe them as you find them and determine them in your own deliberations. I am not giving you any facts when I read you the lesser, included charge. This is just an alternative that you have under the law to find the defendant guilty of unarmed robbery."

The problem with the instruction is that the court inadvertently used the word "probability" in place of "possibility". Aside from our serious doubt that the finding of defendant's guilt of the offense was based even slightly upon the trial court's usage of terms rather than upon the overwhelming evidence, we find the defendant's failure to object fatal to this issue. Had such an objection been raised, a simple corrective instruction could easily have cured any potential prejudice. Therefore, appellate review is precluded by defendant's failure to object. *People v Seabrooks,* 135 Mich App 442, 454; 354 NW2d 374 (1984).

The next issue raised by defendant concerns the trial court's failure to instruct the jury on CJI 4:5:01, which instruction relates to the impeachment of a witness by prior inconsistent statements. Defendant claims that the complainant was successfully impeached since she testified that she described her assailant to the police as having "dilated" or "popping" eyes, while the police witness testified that she described the eyes as "bulging". Further, the complainant testified that she described her assailant as Mexican following the March 6th robbery. The police witness indicated that the robber was described as white.

Regarding the description of the defendant's eyes, we find no basis for giving CJI 4:5:01 since no impeachment occurred. The complainant stated on cross-examination that she described her assailant's eyes as "popped" and that she may have indicated that they were dilated. We cannot agree that the complainant was impeached when the police witness testified that the eyes were described as "bulging"—the terms "bulging" and "popped" are simply not so dissimilar as to constitute inconsistent statements.

As to the racial description of the defendant, the

complainant stated on cross-examination that she informed the officers that she "didn't know exactly, but he looked Mexican". However, defendant failed to lay a proper foundation for impeachment through the testimony of the police witness since the complainant was not "afforded an opportunity to explain or deny" the allegedly inconsistent statement. MRE 613(b). See *People v Claybon,* 124 Mich App 385, 399; 335 NW2d 493 (1983). On the contrary, the complainant was never confronted with the prior description to the police of the assailant as white. Therefore, the trial court's refusal to instruct on CJI 4:5:01 did not constitute error.

Defendant also assigns error to the trial court's refusal to instruct the jury as to the first of two theories of defense submitted by defendant. Our perusal of the first instruction confirms the trial court's conclusion that the instruction went beyond theory and constituted an argumentative restatement of the facts slanted to favor the defendant. We find no error in the trial court's refusal to read the proposed instruction to the jury.

In a supplemental brief filed with this Court, defendant asserts that there was an improper jury instruction regarding the proof necessary to convict of armed robbery. The instruction complained of concerned the second element of armed robbery, and was described for the jury as follows:

"That at the time of such assault, the defendant was armed with a dangerous weapon or with an article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon. A dangerous weapon is anything which a person—the person assaulted reasonably believes could cause serious physical injury or death in the manner in which it is used. Now it is not what you reasonably believe or what the attorneys reasonably believe it is. It

is what the person who is assaulted reasonably believes to be a dangerous weapon—the person who was assaulted reasonably believes it to be a dangerous weapon, and it does not—You don't have to have a gun in order to commit armed robbery; you understand that. The fact that the prosecution has not presented a gun does not mean that the elements of armed robbery are not present *because I read to you that at the time of the assault the defendant was armed with a dangerous weapon or an article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon.* If you find that Bessie Jones reasonably believed that what this defendant was using was a dangerous weapon, then it fits into this element, and the fact that a gun is not presented here does not mean that this offense is automatically reduced to unarmed robbery either, which I'll talk to you about a little more in a minute." (Emphasis added.)

Defendant argues that the effect of the emphasized portion of the above-quoted instruction was to take from the jury their right to conclude that defendant was armed with *neither* a dangerous weapon nor an article used or fashioned to lead the victim to believe it to be a dangerous weapon. Although we believe that the trial judge was referring to the prosecutor's charges as contained in the information, we agree that the statement conveys the assumption that defendant was in fact so armed. However, in reviewing the trial court's charge to the jury, the instructions must be read as a whole and not extracted piecemeal in an effort to establish reversible error. *People v Stewart,* 126 Mich App 374, 377; 337 NW2d 68 (1983). Reviewing the instructions as a whole, we find numerous instances in which the jury was cautioned to decide each element of the offense based upon the evidence alone and that they were to disregard any comments or instructions by counsel and the court. Since, as a whole, the jury was

properly instructed regarding the second element of the crime of armed robbery, we find an absence of reversible error.

As the final issue regarding the validity of his conviction, defendant complains of the procedures utilized to remove his original court-appointed attorney in favor of a more experienced court-appointed attorney. Defendant contends that presiding Judge Samuel Gardner ordered defendant's original attorney to appear in his courtroom, at which time he was informed that he would be removed due to his inexperience in the criminal law. Apparently, the attorney's only previous criminal trial experience was the defendant's earlier trial on armed robbery and kidnapping charges. Defendant was not given an opportunity to appear and express his wishes regarding continued representation by the attorney.

While we are not without objection to the procedure utilized to remove defendant's first attorney, we nonetheless find no grounds for a new trial. An indigent defendant is not entitled to the counsel of his choice. Rather, he is entitled only to representation by counsel who performs at least as well as a lawyer with ordinary training and skill in the criminal law. *People v Bradley,* 54 Mich App 89, 95; 220 NW2d 305 (1974); *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976). Defendant does not suggest that he received ineffective assistance from the substitute counsel, nor does the record reveal support if such a claim had been raised. Thus, regardless of the desirability of giving more input to the defendant regarding an unrequested change of counsel, defendant has failed to establish any prejudice arising from the procedure utilized. We therefore reject his request for a new trial.

Defendant also raises several sentencing issues,

only one of which is meritorious. Upon remand from this Court for an explication of the factors relied upon in sentencing the defendant, the trial court made reference to the incident of March 21, 1981, during which defendant robbed the complainant while she was in her van in a shopping center parking lot. The trial court noted the following:

"And having driven this woman around all through the south of Wayne County to the north in the truck with a gun to her head, I thought I had an obligation to take the steps to prevent him from in the very near future committing a more serious offense."

This reference was improper since defendant was acquitted of the armed robbery and kidnapping charges and convicted only of unarmed robbery. By relying upon this as a consideration in sentencing defendant, the trial court violated the rule of *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972), which states that the trial court "may not make an independent finding of a defendant's guilt on another charge, especially where a defendant has been found not guilty". *People v Carter,* 128 Mich App 541, 551; 341 NW2d 128 (1983). The sentence is therefore set aside and the case remanded to the trial court for resentencing.

Remanded for resentencing only; affirmed in all other respects.