PEOPLE v SMITH

Docket No. 78438. Submitted October 2, 1985, at Lansing.—Decided
    January 28, 1986.

Frederick J. Smith was convicted of armed robbery, first-degree
    criminal sexual conduct and felony-firearm, following a jury
    trial in Recorder's Court of Detroit, Richard P. Hathaway, J.
    The complainant, who had had an opportunity to observe her
    assailant over a period of several hours under good lighting
    conditions, identified the defendant as her assailant, as she had
    previously done in both a photographic and a corporeal show-
    up. Defendant's defense was based upon the alibi testimony of a
    friend and the friend's mother, his stepfather and two cousins.
    Defendant appealed. *Held:*

    1. The prosecutor properly questioned the alibi witnesses
    concerning why they had not informed the authorities about
    the alibi defense earlier than they did and properly commented
    on the failure of the witnesses to do so, since examination
    concerning and comments on an alibi witness's failure to speak
    or act in a manner that would have been natural to do under
    the circumstances is permissible. The prosecutor's comments
    were properly limited to the fact that the delay in notifying the
    authorities about the alibi gave the witnesses the opportunity
    to coordinate their stories.

    2. The prosecutor properly asked questions and made com-
    ments about the fact that all the alibi witnesses were friends of
    the defendant.

    3. The brief questioning by the court of two of the alibi
    witnesses did not constitute an abuse of discretion which would
    mandate reversal.

    4. Reversal is not mandated because of the brief comment in
    the prosecutor's opening statement which intimated that defen-

REFERENCES

Am Jur 2d, Appeal and Error §§ 797 *et seq.*
Am Jur 2d, Evidence § 1147.
Am Jur 2d, Trial §§ 87, 211 *et seq.*
Am Jur 2d, Witnesses §§ 420, 656 *et seq.*
Weight and sufficiency of blood-grouping tests in criminal cases. 2
    ALR4th 500.

dant had been arrested on prior occasions, since it was clearly not made in bad faith and, in any event, the question of defendant's prior criminal record was brought out before the jury in both the direct examination and the cross-examination of defendant.

5. The admission of the blood-type evidence, if error at all, was harmless error in this case since the identification of defendant rested primarily upon the identification by the complainant.

6. Since defense counsel argued that because of the alibi evidence the jury should insist upon some evidence corroborating the complainant's testimony, evidence which the prosecution had not supplied, the trial court properly instructed the jury that they could convict on the basis of the complainant's uncorroborated testimony.

Affirmed.

1. CRIMINAL LAW — WITNESSES — FAILURE TO ACT.

The credibility of an alibi witness may be attacked by showing that he failed to speak or act when it would have been natural to do so if the facts were in accordance with his testimony.

2. CRIMINAL LAW — WITNESSES — ALIBI WITNESSES — PROSECUTORIAL COMMENT.

A prosecutor may properly elicit evidence and comment upon the fact that all of a criminal defendant's alibi witnesses were friends and acquaintances of the defendant (MCL 600.2158; MSA 27A.2158).

3. CRIMINAL LAW — PROSECUTORIAL COMMENT — CLOSING ARGUMENT.

A prosecutor, as an advocate, is free, in closing argument, to relate the facts to his theory of the case and to argue the evidence and all reasonable inferences to be drawn therefrom.

4. TRIAL — JUDGES — EXAMINATION OF WITNESSES.

It is not an abuse of discretion for a trial court to question alibi witnesses in a criminal trial where the court's questions were brief, relevant and were not such as would arouse suspicion in the minds of the jurors and where the examination was neither hostile nor invaded the role of the prosecutor.

5. CRIMINAL LAW — PROSECUTORIAL COMMENT — PRIOR CRIMINAL RECORD.

Reversal is not mandated because of a brief prosecutorial comment in the opening statement concerning a statement made to the police which suggested that the defendant had been arrested on prior occasions where it is clear that the comment

was not made in bad faith, no further testimony or comment was made concerning defendant's statement to the police at the time of his arrest and defendant took the stand and was fully cross-examined about his prior criminal record.

6. EVIDENCE — BLOOD TYPES — IDENTIFICATION — HARMLESS ERROR.
    Error, if any, in the admission of blood-type identification evidence in a criminal sexual conduct trial is harmless where there is a positive identification of the defendant by the complainant, coupled with evidence of the complainant's opportunity to observe the defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Sue E. Radulovich,* for defendant.

Before: M. J. KELLY, P.J., and ALLEN and R. M. SHUSTER,* JJ.

PER CURIAM. Defendant appeals as of right from jury convictions of armed robbery, MCL 750.529; MSA 28.797, first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2) and felony-firearm, MCL 750.227b; MSA 28.424(2). He was sentenced to terms of from 10 to 20 years on the robbery conviction and from 30 to 60 years on the criminal sexual conduct conviction, as well as to the mandatory two-year term on the felony-firearm conviction. We affirm.

The complainant in this case was 72-year-old Mable Hall who testified that at 10 o'clock a.m. on September 13, 1983, she opened her front door to the defendant in the belief that he was her son-in-law, whom she was expecting. Defendant quickly entered complainant's home, produced a handgun and prevented her from leaving.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Over the next two hours, defendant searched complainant's home for money, a bank book and guns and took into his possession $92 from complainant's purse as well as her J. C. Penney's charge card. Defendant then forced complainant to engage in sexual relations, after which he seized the four-month old baby for whom she was babysitting and forced complainant to accompany him to the J. C. Penney's store at the nearby Northland Shopping Center. Under concealed gunpoint, defendant forced complainant to use her charge card to purchase clothes for him. At one point, complainant managed to silently mouth the word "robbery" to a Penney's sales clerk.

Defendant testified at trial and introduced the testimony of five alibi witnesses. All testified that on September 13, 1983, defendant was observed on the east side of the City of Detroit at the time or near the time complainant was being robbed and assaulted in her home on the city's west side. The five alibi witnesses were George Snodgrass, defendant's friend of three to five years, George's mother, his stepfather and two male cousins.

On appeal, defendant raises seven issues, three of which involve his alibi defense. We will consider these arguments first.

Examination and comment upon an alibi witness's failure to speak or act in a manner that would have been natural to do under the circumstances of a particular case is permissible in Michigan. See *People v Lafayette*, 138 Mich App 380, 388-389; 360 NW2d 891 (1984), and cases cited therein. The prosecutor in this case did not comment upon the witnesses' failure to come forward immediately to volunteer information to the police to show that they were bad citizens and should therefore not be believed. Rather, the prosecution argued that the witnesses' delay in reporting such

exculpatory information to the police on behalf of defendant meant that the witnesses had an opportunity to coordinate their stories. This was permissible argument.

Moreover, it was not improper for the prosecutor to elicit and comment upon the fact that all five witnesses were friends or acquaintances of the defendant. See MCL 600.2158; MSA 27A.2158. Nor was it impermissible for the prosecutor to impeach George Snodgrass with questions regarding his prior criminal convictions. MRE 609. The prosecutor in this case was presented with an alibi defense and it was his duty to fairly point up the weaknesses of that defense. This the prosecutor did by commenting in closing argument about the relationship between defendant and his alibi witnesses, and their failure to come forward to the police upon being informed of the charges against him, providing ample opportunity to coordinate testimony. The prosecutor's closing argument essentially related his theory of the case as supported by the evidence and all reasonable inferences drawn therefrom. *People v Jancar,* 140 Mich App 222, 233; 363 NW2d 455 (1985).

Defendant's complaint regarding the trial court's questioning of two of his alibi witnesses is likewise without merit. The trial court's questions were brief, relevant and did not tend to arouse suspicion in the minds of the jurors. Since the examination was neither hostile nor invaded the role of the prosecutor, we find no abuse of the trial court's discretion in its examination and no prejudice to the defendant. *People v Gendron,* 144 Mich App 509, 517-518; 376 NW2d 143 (1985).

Defendant raises four additional issues on appeal which we now consider.

We are not persuaded that reversal is required because of the prosecutor's opening statement re-

garding defendant's comment to the police upon his arrest that he was "sick of going to jail". First, the trial court excluded any testimony or further reference to the defendant's remark on the ground that it was inadmissible hearsay. Second, defendant testified at trial and was cross-examined about his prior criminal record, thus placing before the jury the fact that he had previously served jail time. Third, there is nothing to suggest that the prosecutor's remark was made in bad faith. Under all of these circumstances, we do not think that the defendant was unfairly prejudiced by the prosecutor's brief remark in the opening statement, and we find any error resulting from that statement harmless beyond a reasonable doubt. See *People v Davis,* 343 Mich 348, 357; 72 NW2d 269 (1955).

Nor do we find that reversal is mandated because of the admission of certain blood-type evidence at trial. Police experts testified that the semen stains found on the mattress upon which complainant was sexually assaulted and on the complainant's clothing came from an individual secreter possessing blood-type B. Defendant, a black male, possesses blood-type B, as does 20% of the black population. While two members of this panel would disagree as to the admissibility of the blood-type evidence, contrast Judge KELLY's opinions in *People v Sturdivant,* 91 Mich App 128; 283 NW2d 669 (1979), *People v White,* 102 Mich App 156; 301 NW2d 837 (1980), and *People v Goree,* 132 Mich App 693; 349 NW2d 220 (1984), with Judge ALLEN's opinion in *People v Thorin,* 126 Mich App 293, 302; 336 NW2d 913 (1983), all members of this panel agree that the error, if any, in admitting blood-type evidence in this case is harmless beyond a reasonable doubt.

The complainant spent a period of at least two hours with defendant in her home, outside in broad daylight, and in a J. C. Penney's store. Defendant made no attempt to disguise or conceal his face and complainant thus had ample opportunity to observe her assailant's appearance. Prior to the preliminary examination, complainant selected defendant's picture from a photographic display and positively identified defendant in a live line-up. Complainant also positively identified defendant at the preliminary examination and at trial. Given the strength of the identification testimony in this case, we are not persuaded that a single juror's verdict would be different had the blood-type evidence not been admitted. *People v Sturdivant, supra.*

The trial court did not err in reading as part of its instructions CJI 20:1:01, which accurately states the law as provided in MCL 750.520h; MSA 28.788(8). Moreover, the instruction was applicable in this case since defense counsel vigorously argued in closing that, because of the strength of the alibi defense, the jury should insist on some corroborative evidence, which the prosecution had failed to supply.

Finally, our consciences are not shocked by the imposition of a sentence of from 30 to 60 years for defendant's conviction of first-degree criminal sexual conduct. *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983). The trial court relied upon the particularly offensive nature of this crime in departing from the sentence recommended under the sentencing guidelines. We agree that the circumstances of this offense justify the imposition of a relatively harsh sentence and we affirm.

Affirmed.