PEOPLE v DIAZ

Docket No. 78-169. Submitted June 2, 1980, at Lansing.—Decided July 22, 1980.

Frank Diaz was convicted of delivery of heroin, Saginaw Circuit Court, Hazen R. Armstrong, J. He appeals, alleging the trial court erred in (1) ordering his codefendant to complete the presentation of his defense prior to any presentation by defendant Diaz, (2) permitting the prosecutor to examine a rebuttal witness who was not noticed until the day he was to testify, (3) allowing the prosecutor to cross-examine defendant's alibi witnesses concerning their failure to contact the police regarding the alibi after defendant's arrest, and (4) prohibiting defendant from calling a certain witness in his defense. *Held:*

1. The order of proofs in a criminal case is largely discretionary with the trial judge. The trial court's exercise of discretion in ordering the codefendant to complete his case before defendant Diaz could present any witnesses so as to prevent confusion for the jury did not constitute error.

2. The trial court properly admitted the testimony of the prosecution's rebuttal witness since the name of the witness was not available when notice was required and could not have been available in the exercise of due diligence.

3. It was proper for the trial court to allow the prosecutor to cross-examine defendant's alibi witnesses concerning their failure to come forward with the alibi prior to trial since the credibility of a witness may be attacked by showing that he failed to speak or act where it would have been natural to do so if the facts were in accordance with his testimony.

4. It was not error for the trial court to preclude calling a

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial § 146.
[2] 75 Am Jur 2d, Trial § 158.
[3, 4] 75 Am Jur 2d, Trial § 159.
[4] 81 Am Jur 2d, Witnesses §§ 4, 74.
[5] 81 Am Jur 2d, Witnesses § 658.
[6-8] 81 Am Jur 2d, Witnesses §§ 507, 662 *et seq.*

defense witness where the court knew he would claim his Fifth
Amendment privilege and refuse to testify.

Affirmed.

1. Criminal Law — Trial — Order of Proofs — Judicial Discretion.

The order of presentation of proofs in a criminal trial is largely
discretionary with the trial judge.

2. Criminal Law — Trial — Defense — Order of Presentation — Joint Trial — Unified Strategy.

A defendant can decide when he may testify during trial in the
course of presenting his own defense, but where codefendants
are jointly tried, their defenses are separate and independent,
and they have no right to commingle their witnesses to achieve
a unified strategy.

3. Prosecuting Attorneys — Trial — Notice of Rebuttal — Unfair Surprise — Alibi Defense — Criminal Law.

The prosecutor is required to file a notice of rebuttal to prevent
unfair surprise at trial where a defendant has asserted an alibi
defense.

4. Witnesses — Criminal Law — Parties — Duty to Disclose — Post-Filing Notice of Rebuttal — Motions — Alibi Defense — Trial.

Both the defendant and the prosecuting attorney are under a
continuing duty to disclose promptly the names of additional
witnesses which come to the attention of either party subsequent to filing their respective notices of alibi and rebuttal, and
upon motion with notice to the opposite party and upon a
showing by the moving party that the name of an additional
witness was not and could not have been, by the exercise of due
diligence, available when the notice was filed, such witness may
be called during trial to establish or rebut an alibi defense.

5. Trial — Jury — Credibility of Witnesses — Alibi Defense.

It is within the jury's province to determine the credibility of all
witnesses, including any whose testimony tends to establish an
alibi.

6. Witnesses — Attack on Credibility — Failure to Speak or Act.

The credibility of a witness may be attacked by showing that he
failed to speak or act where it would have been natural to do so
if the facts were in accordance with his testimony.

7. WITNESSES — ALIBI WITNESSES — CROSS-EXAMINATION — FAILURE TO COME FORWARD — CRIMINAL LAW.

It is proper to cross-examine an alibi witness concerning his failure to come forward with the alibi prior to trial.

8. WITNESSES — EXCLUSION OF WITNESSES — CLAIM OF PRIVILEGE — NO ERROR.

The exclusion of a defense witness by a trial court where the court knew that the witness would claim his Fifth Amendment privilege and refuse to testify does not constitute error; the exercise of a witness's constitutional right to remain silent should not be used as evidence to support an inference for either side (MRE 401, 403).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Kay F. Pearson,* Assistant Appellate Prosecuting Attorney, for the people.

*P. E. Bennett,* Assistant State Appellate Defender, for defendant on appeal.

Before: DANHOF, C.J., and M. J. KELLY and G. R. CORSIGLIA,* JJ.

DANHOF, C.J. Following a jury trial, defendant was convicted of delivery of heroin, contrary to MCL 335.341(1)(a); MSA 18.1070(41)(1)(a). On October 14, 1977, defendant was sentenced to 6 to 20 years imprisonment. He appeals as of right.

Defendant was jointly tried with one Robert Jordan, a/k/a Robert Hodges. The charges arose out of a September 1, 1976, transaction with Lansing Police Officer David Ruiz in Saginaw, Michigan. Ruiz, an undercover officer posing as a narcotics dealer, arranged to meet Hodges at 7:15 p.m. at the Scottish Inn in Saginaw. Pursuant to a telephone conversation, Ruiz was to receive a small sample of heroin, one ounce of which would be

---

* Circuit judge, sitting on the Court of Appeals by assignment.

purchased for $1,800 at a later time. At the Inn, Hodges gave Ruiz a wax paper packet containing a brown substance and told him that the heroin was of good quality. They agreed to transact a larger purchase, and Ruiz followed Hodges to the latter's residence. There, he saw two Mexican males seated at a table. Hodges introduced one as "Frank Lopez" and the other as "Mike". Ruiz identified defendant as the man called "Frank Lopez". Hodges then asked defendant if he had the stuff; defendant nodded in an affirmative manner. Defendant removed a baggie containing a brown, powdery substance from his pocket and handed it to Mike who handed it to Ruiz. Defendant assured Ruiz that it was good heroin and agreed that the price was $1,800. The baggie contained 24.1 grams of a substance that was 6.6% heroin. Ruiz paid the money, Hodges counted it, and Mike placed it in his pocket. Defendant and Mike then left the house, Ruiz remaining with Hodges.

Six police officers, two per car, were on surveillance duty during the transaction (via a radio transmitter concealed on Ruiz's person). While three of them observed Ruiz just outside the house with Hodges before the transaction, they did not see anyone leave the residence before Ruiz and Hodges.

Both defendant and Hodges asserted alibi defenses. Hodges testified he was near Bad Axe, Michigan, on September 1, 1976. Five witnesses were called in support of this claim. Defendant testified he was in the Chicago area on September 1, 1976. Four witnesses testified in support of his claim.

Hodges testified that on September 13, 1976, he arranged a transaction at his house between Ruiz and "Mike" Gomez. Defendant was present. But at

the house, Hodges claimed he did not see any drug-related transactions. Defendant testified that he went to Hodges's house with Mike Casarez (a/k/a Mike Gomez) on September 13, 1976. At the house, Casarez produced a bag containing a tan substance which he sold to Ruiz for $1,800.

On appeal, defendant argues that the trial court erred in ordering codefendant Hodges to complete the presentation of his defense before defendant Diaz could present his. He claimed they should have been able to intermingle their proofs so that the alibi evidence of both could be presented before the decision to present evidence implicating them in a later drug sale was made. He asserts that this decision was "pivotal to the defense" so that it was fundamentally unfair for the judge to require the choice without an opportunity to evaluate the actual value of their evidence. We disagree.

The order of proofs in a criminal case is largely discretionary with the trial judge. *People v Bigge,* 297 Mich 58, 67; 297 NW 70 (1941). MCL 768.29; MSA 28.1052, provides in relevant part:

"It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved."

Defendant relies on *Brooks v Tennessee,* 406 US 605; 92 S Ct 1891; 32 L Ed 2d 358 (1972). In that case, the Court held that a statute which precluded a defendant from testifying unless he testified before his other witnesses infringes his right to remain silent and his right to due process of law. The majority concluded:

"While nothing we say here otherwise curtails in any way the ordinary power of a trial judge to set the order of proof, the accused and his counsel may not be restricted in deciding whether, and when in the course of presenting his defense, the accused should take the stand." 406 US 605, 613.

Defendant's reliance on *Brooks* is misplaced. While a defendant can decide when he may testify in the course of presenting *his* own defense, *Brooks* has no application to joint trials like the present. When codefendants are jointly tried, their defenses are separate and independent. They have no right to commingle their witnesses to achieve a unified strategy.

We hold the trial court properly exercised its discretion in deciding that Hodges would finish his case before defendant Diaz could present any witnesses. Due to the complex nature of this case and the large number of witnesses (10 for the people, 11 for Hodges, and 5 for Diaz), an orderly, nonconfusing presentation of testimony to the jury was necessary.

Defendant next argues that the trial court erred in permitting the prosecutor to present a rebuttal witness who was not noticed until the day he was to testify.

On the ninth day of trial, the prosecutor filed a notice of rebuttal naming Damien Pifkowski, the manager of a Chicago Holiday Inn. The prosecutor argued that this witness was unknown to the prosecutor until that very day and the witness could not have been available earlier in the exercise of due diligence. The trial court ruled the evidence admissible.

Where a defendant has asserted an alibi defense, the prosecutor is required to file a notice of rebuttal to prevent unfair surprise at trial. *People v*

*Terry Alexander,* 82 Mich App 621, 627; 267 NW2d 466 (1978). MCL 768.20; MSA 28.1043, provides in relevant part:

"(2) Within 10 days after the receipt of the defendant's notice but not later than 5 days before the trial of the case, or at such other time as the court may direct, the prosecuting attorney shall file and serve upon the defendant a notice of rebuttal which shall contain, as particularly as is known to the prosecuting attorney, the names of the witnesses whom the prosecuting attorney proposes to call in rebuttal to controvert the defendant's defense at the trial of the case.

"(3) Both the defendant and the prosecuting attorney shall be under a continuing duty to disclose promptly the names of additional witnesses which come to the attention of either party subsequent to filing their respective notices as provided in this ‘ section. Upon motion with notice to the other party and upon a showing by the moving party that the name of an additional witness was not available when the notice required by subsections (1) or (2) was filed and could not have been available by the exercise of due diligence, the additional witness may be called by the moving party to testify as a witness for the purpose of establishing or rebutting an alibi defense."

On this record we hold the trial court properly admitted the testimony based on a showing that the name was not available when notice was required and could not have been available in the exercise of due diligence.

Defendant's notice of alibi stated that defendant stayed with one Rudy Castellanos in Chicago. Two of his alibi witnesses could not be located before trial, and the third made no mention of a Holiday Inn. While the two testified at trial that they stayed at a Holiday Inn, the location of the hotel was not ascertained. It was not until defendant testified they stayed in the Holiday Inn near Mel-

rose Park that the prosecution was aware of a possible rebuttal witness. The prosecutor then promptly contacted Damien Pifkowski.

In a related argument, defendant claims that the trial court erred in allowing hearsay testimony from Damien Pifkowski regarding the result of a check of Holiday Inn records by his assistant.

Pifkowski testified that he personally checked the records of his Inn for the names of defendant's party, while his assistant checked two other Inns. The people concede the testimony as to the result of the assistant's search is hearsay but argue that it is harmless error. We agree.

The error was not so offensive to the maintenance of a sound judicial process that it can never be regarded as harmless. *People v Robinson,* 386 Mich 551, 562-563; 194 NW2d 709 (1972). Further, it was harmless beyond a reasonable doubt. This conclusion is derived from an assessment of the direct eyewitness testimony of Officer Ruiz supported by surveillance officers as compared to the evidence presented by defendant. In this light, the hearsay was harmless. Defendant and his witnesses were unclear as to which Holiday Inn they stayed in. The hearsay covered only two Inns in the area and was rebutted by defendant's surrebuttal witness who testified that they stayed in a different Holiday Inn.

Defendant next argues that the prosecutor's cross-examination of the alibi witnesses concerning their failure to contact the police regarding the alibi after defendant was arrested denigrated his alibi defense, denying him a fair trial.

It is within the jury's province to determine the credibility of all witnesses, including any whose testimony tends to establish an alibi. *People v Loudenslager,* 327 Mich 718; 42 NW2d 834 (1950).

The credibility of a witness may be attacked by showing that he failed to speak or act when it would have been natural to do so if the facts were in accordance with his testimony. *People v McClow,* 40 Mich App 185, 193; 198 NW2d 707 (1972). Thus, in *McClow,* a panel of this Court held it proper to cross-examine an alibi witness concerning his failure to come forward with the alibi prior to trial.

We agree with *McClow* and hold that the trial court did not err when it allowed the prosecutor to pose similar questions to defendant's alibi witnesses.

Finally, defendant argues that the trial court erred when it prohibited defendant from calling Mike Gomez, a/k/a Mike Casarez, as a defense witness.

Initially, Casarez could not be located. However, at mid-trial Casarez was found, and both defense counsel wanted to present him as a defense witness. It was defendant's theory that only Casarez was involved in the September 1, 1976, heroin sale to Officer Ruiz. At a hearing outside of the presence of the jury, Casarez was questioned. He stated his name and address but invoked his right to remain silent as to any other questions.

Defendant claims Casarez's exercise of his privilege should have been placed before the jury because it would have aided defendant's theory that Casarez alone had delivered the heroin.

In *People v Giacalone,* 399 Mich 642, 645; 250 NW2d 492 (1977), the Court found an evidentiary trial error where the prosecutor called an accomplice as a witness knowing that he would claim his Fifth Amendment privilege and refuse to testify. The rationale of the rule that a lawyer may not knowingly offer inadmissible evidence or call a

witness knowing that he will claim a valid privilege not to testify is that prejudice arises from the human tendency to treat the claim of privilege as a confession of crime, creating an adverse inference which an accused is powerless to combat by cross-examination.

This Court has split on the question of whether the *Giacalone* prohibition applies to the defense's calling of a witness knowing he would refuse to testify. *People v Bashans,* 80 Mich App 702; 265 NW2d 170 (1978), *cf., People v Jerry Johnson (After Remand),* 86 Mich App 430; 272 NW2d 672 (1978).

We conclude the trial court did not err in precluding the calling of this witness. As a matter of public policy, we believe the exercise of a witness's constitutional right to remain silent should not be used as evidence to support an inference for either side. Such an inference is wholly speculative since it rests on litigants' perception of juries' foibles. A jury may infer the refusal to testify is a confession implicating defendant or may somehow believe defendant was not involved since his accomplice would not testify. Neither inference is desirable because the former is obviously prejudicial to defendants while the latter inference cannot be combated by the truth testing device of cross-examination due to the constitutional rights of the witness. Nor can the evidence be termed "relevant evidence". Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. MRE 401. The wholly speculative inference advanced by defendant does not make the existence of any fact of consequence more probable or less probable. The witness was properly excluded. MRE 403.

Affirmed.