# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DARIN MICHAEL CHAMPINE,

        Defendant-Appellant.

UNPUBLISHED
December 8, 2015

No. 323018
Clare Circuit Court
LC No. 13-004668-FH

Before: SAAD, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

A jury convicted defendant of two counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a) (person under 13), three counts of gross indecency between a male and female, MCL 750.338b, three counts of accosting a child for immoral purposes, MCL 750.145a, and three counts of aggravated indecent exposure, MCL 750.335a. He was sentenced to serve 86 months to 15 years for the CSC II convictions, 40 months to 5 years for the gross indecency convictions, 32 months to 4 years for the accosting convictions, and 16 months to 2 years for the indecent exposure convictions, with credit for 60 days served. Defendant appeals as of right. We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to support his convictions. We disagree.

"In reviewing the denial of a motion for a directed verdict of acquittal, this Court reviews the evidence in a light most favorable to the prosecution in order to 'determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt.' " *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006), quoting *People v Riley (After Remand)*, 468 Mich 135, 139-140; 659 NW2d 611 (2003). All conflicts in the evidence must be resolved in favor of the prosecution. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). This Court does not revisit credibility issues on appeal. *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002). Thus, this Court "is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

-1-

Defendant does not challenge the elements of the offenses, but asserts that he was not present at Stan Achram's home or his own home during the time period when these offenses allegedly occurred. He also questions the victims' credibility, asserting that at times their testimony was "contradictory and confused," and that the girls had an underlying motive to bring harm to defendant and his family. Defendant also notes that the victims made the allegations after prompting from Detective Erica Vredevelt, who defendant asserts had made a prior threat against his family.

In regard to defendant's argument concerning the alibi evidence he presented, "[i]t is within the jury's province to determine the credibility of all witnesses, including any whose testimony tends to establish an alibi." *People v Diaz*, 98 Mich App 675, 682; 296 NW2d 337 (1980). This rule applies even if testimony is in direct conflict or has been impeached. *People v Lemmon*, 456 Mich 625, 642-643; 576 NW2d 129 (1998). Thus, defendant's questioning of the victims' contradictory testimony presented an issue for resolution by the trier of fact. The jury, having convicted defendant of the charges, necessarily determined that the victims were credible and that defendant's testimony that he was not present when the alleged crimes occurred was not credible. This Court may not interfere with the jury's credibility determination, *Milstead*, 250 Mich App at 404, and "is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Nowack*, 462 Mich at 400. Thus, defendant's argument that he established that he was not present at Stan's home or his own home during the time period when these offenses allegedly occurred is without merit.[1]

## II. SCORING GUIDELINES

Defendant next argues that the trial court erred in scoring offense variables (OV) 4, OV 8, OV 9, and OV 10.[2] We disagree.

---

[1] We note that defendant's "alibi" argument was quite weak. It was not corroborated by other witnesses. Defendant admitted to purchasing his home around the time of the incidents, and Stan testified that defendant stayed with him on and off for a few weeks at a time over the years, each time sleeping in TP's bedroom. Amy Prater testified that, although defendant did travel often, he would stay at their house on occasion, or would be over at their house often even if he was in town but not staying with them.

[2] In *People v Lockridge*, 498 Mich 358; ___ NW2d ___ (2015), our Supreme Court concluded that the legislative sentencing guidelines violate a defendant's Sixth Amendment fundamental right to a jury trial and are constitutionally deficient to the extent they require judicial fact-finding beyond facts admitted by the defendant or found by the jury to mandatorily increase the floor of the minimum sentence range. *Id*. at 364-365. However, the remedy for this constitutional violation is the severance of MCL 769.34(2) to the extent that it makes the guidelines mandatory. *Id*. "To make a threshold showing of plain error that would require resentencing, a defendant must demonstrate that his or her OV level was calculated using facts beyond those found by the jury or admitted by the defendant and that a corresponding reduction in the defendant's OV score to account for the error would change the applicable guidelines

Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (footnotes omitted).]

## A. OV 4

Defendant was scored 10 points for OV 4, addressing "psychological injury to a victim," and 10 points is appropriate if there is evidence that a "serious psychological injury" that "may require professional treatment" occurred to a victim. MCL 777.34(1). Whether the victim seeks professional treatment is not conclusive with regard to scoring this variable. *People v Waclawski*, 286 Mich App 634, 681; 780 NW2d 321 (2009). A "victim's expression of fearfulness is enough to satisfy the statute." *People v Davenport (After Remand)*, 286 Mich App 191, 200; 779 NW2d 257 (2009).

In assessing the 10-point score, the trial court relied primarily on victim impact statements contained in the presentence investigation report (PSIR). TP stated that she is scared to go in public, scared to be around people, scared to be alone, and sad that she did not tell anyone what had happened earlier. She stated that she was receiving counseling, was diagnosed with post traumatic stress disorder (PTSD) and major anxiety, was taking antidepressant medication, and sees a doctor regularly to help with her conditions. The court concluded that she suffered from a serious psychological injury and that she did, in fact, require counseling and professional treatment. With regard to KH, the trial court noted that she indicated that she had completely secluded herself from people, does not trust others, and feels disgusting, invaded, betrayed, ashamed, alone, worthless, unimportant, and violated. She indicated that she engaged in self-harm and developed an eating disorder as a result of the crime, and that she has been to counseling and fights the urge to commit suicide. The court concluded that KH suffered from a serious psychological injury and that she did, in fact, seek counseling. The victims' statements that they were in fact receiving counseling to deal with the emotions associated with the incidents was sufficient to support the trial court's finding that the victims suffered a serious psychological injury. Accordingly, we uphold the trial court's scoring of OV 4.

## B. OV 8

Defendant was scored 15 points for OV 8, governing "victim asportation or captivity," and 15 points is appropriate if there is evidence that "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1). Defendant relies on *People v Thompson*, 488 Mich 888; 788 NW2d 677 (2010), a Supreme Court remand order finding that the victim's movement to the bedroom where the sexual assault occurred was merely incidental to the crime.

---

minimum sentence range." *Id*. at 399. Here, defendant has not raised a Sixth Amendment *Lockridge* violation, and therefore, we do not address it.

In assessing the score, the trial court reasoned that a score of 15 points was appropriate because defendant had the victims transported to his house to babysit them and because, at Stan's house, he moved the victims from a common area to his bedroom to molest them. MCL 777.38(1)(a) does not require that *defendant* asport the victims to a place of greater danger, but only that the victim be "asported to another place of greater danger." Here, when the victims were taken to defendant's home for babysitting, they were "asported to another place of greater danger." MCL 777.38(1)(a); see *People v Spanke*, 254 Mich App 642, 648; 658 NW2d 504 (2003) (upholding a score of 15 points under OV 8 when "[t]he victims were moved, even if voluntarily, to defendant's home where the criminal acts occurred. The victims were without doubt asported to another place or situation of greater danger, because the crimes could not have occurred as they did without the movement of defendant and the victims to a location where they were secreted from observation by others."); see also *People v Steele*, 283 Mich App 472, 491; 769 NW2d 256 (2009) (upholding a score of 15 points under OV 8 when the defendant took the victims to more isolated locations, which were "places or situations of greater danger because they are places where others were less likely to see defendant committing crimes.").

We reject defendant's argument that the victim's movement to the bedroom in Stan's house was merely incidental to the crime. Rather, it was a major and necessary part of the crime. Defendant could not have shown the victims' a pornographic movie, masturbated, asked the victims to disrobe, or groped the victims in the living room of Stan's house without getting caught. Defendant needed to take the victims to his exclusive space in the house – TP's bedroom, to keep his actions a secret. Accordingly, we uphold the trial court's scoring decision with regard to OV 8.

## C. OV 9

Defendant was scored 10 points for OV 9, addressing "number of victims," and 10 points is appropriate if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). On appeal, defendant asserts that there is no evidence that the girls had exposure to damage to their bodies or exposure to death; he maintains that the testimony only indicated over the clothes touching and sexual contact.

The trial court scored 10 points because each of the victims testified that they were always with at least one other victim when anything happened with defendant, and that when a child is in the company of someone else being molested they are "certainly . . . in danger of physical injury." The victims' accounts, that another girl was present when defendant touched them, were sufficient to support this score. Even if the touching occurred over the victims' clothing, they were nonetheless *placed in danger of* physical injury. Defendant could have done more, sexually or otherwise. One victim testified that she was "very scared," and defendant also told the victims that "[w]hatever happens in this room stays in this room," which could be interpreted as a threat. Accordingly, we uphold the scoring of OV 9.

## D. OV 10

Defendant was scored 15 points for OV 10, governing "exploitation of vulnerable victim," and 15 points is appropriate if "predatory conduct was involved." MCL 777.40(1)(a). "'Predatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose

of victimization." MCL 777.40(3)(a). On appeal, defendant asserts that the score was inappropriate because there was no evidence of any grooming activity, such as "buying gifts, or trying to curry favor with the females, or engaging in less intrusive sexual contact in order to desensitize any female to future sexual contact."

The trial court concluded the acts that occurred before the CSC II offenses constituted predatory conduct. Specifically, before the commission of the CSC II offenses, defendant inappropriately danced with the victims, gave them wine coolers, showed them pornographic movies, and exposed himself and masturbated in front of them. The court reasoned that these activities constituted predatory conduct because it was "a classic example of desensitizing a young child, to make them think that sexual activity would not—that sexual activity would be appropriate with an adult."

We conclude that defendant's pre-CSC II actions were sufficient to support the trial court's conclusion that defendant engaged in predatory conduct. Defendant could have used those activities to desensitize the victims to sexuality and to engaging in sexual acts with him. See *Waclawski*, 286 Mich App at 686 (act of befriending the victims, becoming their confidant, and giving them alcohol, cigarettes, and pornography was sufficient for a 15-point predatory conduct score for OV 10); see also *Steele*, 283 Mich App at 491-492 (grooming). Accordingly, we uphold the scoring of OV 10.

## III. CONSTITUTIONALITY OF APPELLATE REVIEW OF SENTENCES

Defendant argues that MCL769.34(10), which precludes appellate review of a sentence within the statutory sentencing guidelines range if properly scored on accurate information, is unconstitutional as a violation of separation of powers and due process of law and in derogation of the state constitutional right to appeal as a matter of right or by leave to appeal. Defendant failed to preserve these issues; accordingly, our review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764, 774; 597 NW2d 130 (1999). Reversal is warranted only if the error resulted in the conviction of an innocent defendant or the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *People v Taylor*, 252 Mich App 519, 523; 652 NW2d 526 (2002).

Defendant concedes that our Supreme Court foreclosed his separation-of-powers argument in *People v Garza*, 469 Mich 431, 433; 670 NW2d 662 (2003). Because this Court is bound by our Supreme Court's decision in *Garza*, defendant's argument must be rejected. See *People v Hall*, 249 Mich App 262, 270; 643 NW2d 253 (2002) (this Court is required by *stare decisis* to follow decisions of our Supreme Court).

Defendant also argues that MCL 769.34(10) violates his procedural and substantive due-process rights to appeal, citing *Dodge v Detroit Trust Co*, 300 Mich 575; 2 NW2d 509 (1942), which describes the denial of due process in a criminal trial as "the failure to observe the fundamental fairness essential to the very concept of justice." However, MCL 769.34(10) does not abolish a defendant's right to appeal, but limits a defendant's right to challenge his sentence to circumstances in which the sentence does not adhere to the legislative requirements. A defendant may still show on appeal that the trial court committed a scoring error or relied upon

-5-

inaccurate information. Therefore, the statute does not unconstitutionally interfere with a defendant's right to appeal.

Defendant also asserts that his sentences are disproportionate to his crimes and himself as an offender, and thus violate the ban on cruel and unusual punishment. This argument is precluded by MCL 769.34(10), which states that "if a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." Here, defendant's sentences fell within the guidelines range, there are no errors in the scoring of the sentencing guidelines, and the trial court did not rely on inaccurate information in determining defendant's sentences.

## IV. STANDARD 4 BRIEF.

Defendant raises two issues in his Standard 4 brief. The first issue concerns effective assistance of counsel and the second issue concerns his sentences.

## A. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that his counsel rendered ineffective assistance. We disagree. The determination as to whether there has been a deprivation of the effective assistance of counsel is a mixed question of law and fact. The factual findings are reviewed for clear error, and questions of law are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The ultimate decision whether counsel rendered ineffective assistance is reviewed de novo. *Id*. Because no evidentiary hearing on the effectiveness of counsel has been held, there are no factual findings to review, and this Court is left to examine this issue on the basis of the existing record. *People v Thomas*, 260 Mich App 450, 456-457; 678 NW2d 631 (2004); *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002).

Defendant argues that he was denied his right to the effective assistance of counsel when counsel: (1) conducted inadequate discovery, (2) improperly vetted witnesses for trial, and (3) failed to adequately cross examine the victims.

Effective assistance of counsel is presumed and a defendant is required to overcome a strong presumption that sound trial strategy motivated counsel's conduct. *LeBlanc*, 465 Mich at 578. To establish ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Mack*, 265 Mich App 122, 129; 695 NW2d 342 (2005); *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

Regarding (1), defendant's argument consists of the following:

In the instance [sic] case, trial counsel failed to obtain, review, and employ discovery material after the Court granted in part his [discovery] motion. This material would have established Investigator Erica Vredevelt's bias and fraudulent reports relating to an alleged pornographic movie of his ex-wife which Complainants testified to have watched; and Investigator Vredevelt claimed to

-6-

possess[.] However, during trial proceedings, Vredevelt disputed the film even existed; yet, it remained listed in her police report. Moreover, counsel failed to obtain the disciplinary reports of Investigator Vredvelt's which was also part of the discovery that would have disputed the investigator's testimony, and rendering [sic] the police report invalid.

Here, counsel was not ineffective for failing to conduct sufficient discovery. Counsel made numerous written requests for discovery, including for *Brady*[3] material, impeachment evidence, any evidence of bias or motive to lie, as well as tangible objects. Further, even if this additional material does exist as defendant asserts, defendant cannot show that it would have made a difference in the outcome of the trial. Defense counsel's cross-examination of Vredvelt was thorough and was directed at how she conducted interviews with the victims and other children. Defendant cannot show a reasonable likelihood that the addition of disciplinary history or anything regarding the film would have changed the outcome of the proceedings. The case ultimately rested on the victims' statements as to what defendant did. Defendant has failed to show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms or that there is a reasonable probability that the outcome of the proceedings would have been different. *Mack*, 265 Mich App at 129.

Regarding (2), defendant's argument consists of the following:

Witness Heuy [sic] Lewis, vice-principle [sic] of Farwell Middle school where the complainants attend school would have impeached the credibility of [TP] and her [mother's] testimonies.

Further, Counsel failed to contact and interview the Farwell High School Principal, Jason Wolf. Principal Wolf would have testified that Investigator Erica Vredevelt was disciplined and had to publicly apologize to Defendant and his step-daughter, Brittany Parrish in his office for verbal threats and assaults made against Brittany in Defendant's home. This testimony would have established a bias against Defendant and if Counsel had reviewed the disciplinary reports submitted by Sheriff Wilson, Defendant would have had an effective lawyer and it is highly probably that a different outcome would have resulted.

In addition, Sheriff Wilson was on Defendant's witness list but for trial counsel's neglect, was never contacted or interviewed. Sheriff Wilson would have testified that Investigator Vredevelt had been disciplined, a fact which the investigator denied while testifying, thus perjury would have been clearly demonstrated if Counsel would have reasonably investigated.

\* \* \*

---

[3] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

Defendant also argues that trial counsel was indeed ineffective when he failed to contact, interview, and call to testify Brandon Hamilton. Brandon Hamilton was listed on Defendant's lists of witnesses. [KH] testified that Mr. Hamilton once walked into the room when Defendant displayed his penis. However, trial counsel neither questioned nor interviewed Brandon Hamilton in order to substantiate the complainant's tale.

"Defense counsel's failure to present certain evidence will only constitute ineffective assistance of counsel if it deprived defendant of a substantial defense." *People v Dunigan*, 299 Mich App 579, 589; 831 NW2d 243 (2013). "Moreover, decisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight." *Id*. at 589-590.

First, there is no record evidence to support any of defendant's arguments. Defendant's assertions are speculative because he has provided no affidavit or other documentary evidence from these individuals to indicate that they would give the recited testimony. Second, counsel specifically listed Lewis and Hamilton on his nearly 52-person witness list, and defendant has not overcome the presumption that it was a matter of trial strategy not to call them. *Dunigan*, 299 Mich App at 589-590. Moreover, since defendant has provided no affidavits, his argument is based on speculation. It is just as likely that Lewis could have bolstered TP and her mother's testimony, or that Hamilton would have testified that he did walk in on defendant.[4] Moreover, even assuming that Lewis would have impeached TP and her mother's credibility and Hamilton would have impeached KH, the potential to impeach credibility did not deprive defendant of a substantial defense. *Id*. at 589. Likewise, regarding defendant's claim that Wolf and Wilson would have impeached Vredevelt's credibility, trial counsel's presumably strategic decision not to call these witnesses for potentially weak impeachment points did not deprive defendant of a substantial defense. *Id*. And, again, defendant has not shown a reasonable likelihood that the absence of these alleged failures would have changed the outcome of the proceedings. The case ultimately rested on the victims' statements as to what defendant did.

Regarding (3), defendant's argument consists of the following:

Lastly, Defendant imperatively states that fabrication of the complainants accusations could have been indisputably challenged had trial counsel asked the simple question – is the Defendant circumcised?

Defendant asserts that within the complainants questionable tales, an analogous event was described, that Defendant had masturbated in the presence of all the complainants.

Defendant asserts that he adamantly requested trial counsel to ask the complainants if Defendant was circumcised; however, trial counsel refused to ask

---

[4] We note that we found no trial testimony by KH where she asserted that Hamilton walked into the room when defendant displayed his penis.

because it would be inappropriate and highly offensive. Defendant states the question was a legitimate and reasonably [sic] approach to conclude the complainants testimonies were indeed fabricated.

We note that the jury might have been offended by a question being posed to these young girls inquiring whether defendant's penis was circumcised. Also, the victims may not have known what the term meant, or, if one assumes that defendant is telling the truth, the victims could have even guessed and correctly identified defendant as being circumcised (or not), and greatly damaged defendant's case. These concerns could have led to counsel's strategic decision not to ask that question. Additionally, it is unlikely that asking this question would have resulted in an acquittal. Accordingly, defendant has failed to show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms or that there is a reasonable probability that the outcome of the proceedings would have been different. *Mack*, 265 Mich App at 129.

## B. SENTENCING

Defendant's final argument in his Standard 4 brief consists of the following:

Defendant asserts that because he maintained his innocence and refused to take a plea, the Court improperly expressed an intemperate attitude toward Defendant and carried through with its threats by imposing an abusive sentence which was contrary to the legislative scheme for criminal sentencing.

Defendant's sentences fell within the guidelines range, there are no errors in the scoring of the sentencing guidelines, and the trial court did not rely on inaccurate information in determining defendant's sentences. As a result, defendant's argument is precluded by MCL 769.34(10). Regardless, the trial court's sentence was not contrary to the legislative scheme for criminal sentencing. Accordingly, defendant cannot demonstrate error.

Affirmed.

/s/ Henry William Saad
/s/ Cynthia D. Stephens
/s/ Colleen A. O'Brien