# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 16, 2017

Plaintiff-Appellee,

v

No. 333344
Wayne Circuit Court
LC No. 16-001125-01-FC

RUBEN ALVIN SCOTT,

Defendant-Appellant.

Before: BECKERING, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of second-degree murder, MCL 750.317, carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 225 to 360 months' imprisonment for the second-degree murder conviction, two to five years' imprisonment for the CCW conviction, and a mandatory two years' imprisonment for the felony-firearm conviction. We affirm.

Defendant was convicted of fatally shooting the victim in a vacant lot in Detroit, Michigan on November 2, 2015. That evening, around 15 people gathered in the lot to celebrate Roy Miller's birthday. Miller's wife, Regina Mosely, testified that she overheard defendant confront the victim at the party regarding an outstanding debt. Mosely then stepped in between the two men and pulled defendant away from the victim. As defendant and Mosely walked away, the victim said, "You act like you want to fight me or something." Mosely further testified that defendant then broke away from her grip and "ran over to were [sic] [the victim] was," "pulled out the gun," and "shot" the victim three or four times. The victim eventually died as a result of the gunshot wounds.

At trial, defendant asserted a claim of self-defense, testifying that the victim had gotten a knife from his car and charged toward defendant in an attempt to stab him. Indeed, a knife was recovered at the scene and several witnesses testified that the victim had a reputation for being aggressive, and reckless with guns. However, none of these witnesses saw the victim with a weapon at the party. Additionally, on cross-examination, defendant's claim of self-defense was impeached with recordings of defendant's jailhouse telephone calls in which he claimed he did not shoot the victim, and that he did not know who did.

-1-

At issue in this appeal is the portion of Miller's testimony about a pretrial conversation between Miller and Mosely regarding whether Miller could assert his Fifth Amendment right not to testify. Specifically, during the prosecutor's questioning, the following exchanges occurred:

*Q.* [*The Prosecutor*]: Okay. You came down and you were told you were going to give testimony. And you went ahead and gave testimony under oath; is that correct sir?

*A.* [*Miller*]: I was told that I had waived my rights. And I didn't remember waiving a right. You said we had waived our rights.

*Q.* And in fact, sir, didn't you indicate at some point that you wanted to assert your Fifth Amendment right before you testified today?

*A.* No. I didn't say nothin' like that to you.

*Q.* Not to me sir. But didn't you say it to your wife?

*A.* Yeah, I told her about the Fifth Amendment.

*Mr. Cripps* [defense counsel]: When was this?

*Q.* And that—

*The Court*: Hold on.

*Mr. Cripps*: Yeah. I want to hear this.

*A.* [*The Witness*]: I talk to her about, what, a few days ago.

*The Court*: Okay. You'll get the opportunity to talk.

*Mr. Cripps*: Well, I guess I have a little bit of difficulty here.

*The Court*: Go-ahead.

*Mr. Cripps*: If the witness has told somebody that they're gonna take the Fifth Amendment, your Honor, --

*Ms. Towns* [the prosecutor]: What's the legal objection?

*The Court*: Yeah.

*Ms. Towns*: He didn't assert it. So what's the legal objection. It goes to his reticent [sic]. And the People's position--

*The Court*: That he's a reluctant witness.

*Ms. Towns*: Yes.

-2-

*The Court*: I understand. Go-ahead.

Defense counsel did not make any further response or objection to this line of questioning.

The trial court found Miller's testimony to be unreliable because it "was established that [he] was an extremely reluctant witness" who was impeached multiple times. In rejecting defendant's claim of self-defense, the trial court considered all of the evidence admitted at trial and found that "the testimony of various witnesses including the defendant, prove that the defendant did not act in self-defense or with adequate provocation to reduce the crime to manslaughter." Ultimately, defendant was convicted of second-degree murder, CCW, and felony-firearm.

On appeal, defendant argues that the admission of Miller's testimony regarding his consideration of invoking his Fifth Amendment right violated defendant's right to a fair trial. We disagree. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defendant did not object at trial and specify the same ground for objection that he asserts on appeal, and thus, this issue is unpreserved. See *id*.

This Court reviews an unpreserved claim of evidentiary error for plain error affecting a defendant's substantial rights. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). Plain error is shown by proving, "1) [the] error must have occurred, 2) the error was plain, i.e., clear and obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Generally, to show the error affected substantial rights, it must be proven "that the error affected the outcome of the lower court proceedings." *Id*.

Defendant argues that Miller's testimony violated his right to a fair trial because it was irrelevant or otherwise prejudicial. Under MRE 402, only relevant evidence is admissible. Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. The relevancy "threshold is minimal: any tendency is sufficient probative force." *People v Feezel*, 486 Mich 184, 197; 783 NW2d 67 (2010) (quotation marks and citation omitted). Generally, inquiry into a witness's credibility and bias is always relevant. *People v Layher*, 464 Mich 756, 764; 631 NW2d 281 (2001); *People v McGhee*, 268 Mich App 600, 613–614; 709 NW2d 595 (2005).

The testimony at issue in this case tended to prove that Miller was a reluctant witness, which was relevant to his credibility. Miller had known defendant for 30 years, much longer than the 10 years Miller had known the victim. Miller described defendant as nonaggressive, whereas the victim had a reputation as the neighborhood bully. As the trial court noted, Miller was "an extremely reluctant witness" who did not want to testify or "admit that he saw anything" or "that he gave certain statements to police." In light of these facts, Miller's reluctance to testify was relevant to his bias toward defendant and his credibility as a witness. This Court

defers to the trial court's credibility determinations. *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014).

Relevant evidence, however, is not always admissible. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." MRE 403. "All relevant evidence is prejudicial; it is only unfairly prejudicial evidence that should be excluded. Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury." *McGhee*, 268 Mich App at 613–614. "Rule 403 determinations are best left to a contemporaneous assessment of the presentation, credibility, and effect of testimony[.]" *People v VanderVliet*, 444 Mich 52, 81; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

As previously discussed, the evidence in question was probative of Miller's credibility. Defendant has not shown any danger of unfair prejudice with Miller's testimony, let alone established that the probative value of Miller's testimony was substantially outweighed by that danger. Defendant's reliance on *People v Diaz*, 98 Mich App 675; 296 NW2d 337 (1980) is misplaced. In that case, this Court held that an accomplice's invocation of his right to remain silent was inadmissible under MRE 403 because "prejudice arises from the human tendency to treat the claim of privilege as a confession of a crime, creating an adverse inference which an accused is powerless to combat by cross-examination." *Id.* at 683-684. The facts of this case do not implicate any potential prejudice to defendant because Miller was not an accomplice. Additionally, Miller did actually not invoke his Fifth Amendment right. Instead, he merely testified about a pretrial conversation regarding whether he considered exercising the right. Thus, defendant has failed to show that the trial court committed an error requiring reversal by admitting this evidence.

Further, defendant failed to show how the admission of the evidence in question affected the outcome of lower court proceedings. Defendant argues that the admission of the evidence severely undermined Miller's credibility, which was a critical factor in the trial court's rejection of defendant's self-defense claim. However, defendant's argument overvalues Miller's testimony as "key" in the trial court's rejection of defendant's self-defense claim. Indeed, Miller's testimony was only one of several pieces of evidence the trial court relied on to support its finding. Specifically, the trial court found that defendant's avoidance of police, uncorroborated version of events, flight from the scene, and initial denial of shooting the victim "indicate[d] a consciousness of guilt." In addition, other evidence indicated that defendant was the initial aggressor who initiated the deadly confrontation. See *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013) ("In general, a defendant does not act in justifiable self-defense . . . when the defendant is the initial aggressor."). Notably, no one other than defendant saw the victim with a knife or any other weapon. Furthermore, Mosely testified that she did not see the victim charge at defendant and that once defendant broke away from her, the victim "froze." The defendant then "pulled the gun from his right side and shot at the victim three or four times." Defendant also admitted that shortly before the shooting, he pushed the victim away after the victim attempted to make a "peace offering" with him. Given the overwhelming amount of evidence that the trial court relied on in rejecting defendant's self-defense claim, Miller's testimony was of little importance. Therefore, even if the trial court erred in admitting this portion of Miller's testimony, the error would not require reversal of defendant's convictions

because this portion of Miller's testimony did not affect the outcome of the proceedings. *Carines*, 460 Mich at 763.

Accordingly, the trial court did not commit error requiring reversal by allowing the prosecutor to question Miller about his pretrial conversation regarding his ability to exercise his Fifth Amendment right not to testify.

Affirmed.

/s/ Jane M. Beckering
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron